**DUPLICATE ORIGINAL** FILED

2007 MAR -9 PM 2: 43

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2007 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 07-____ **07- *173** |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; |
| | 18 U.S.C. § 1341: Mail Fraud; |
| MAHMOUD KHALID AZZAM, | 18 U.S.C. § 1343: Wire Fraud; |
| aka Abu Adam, | 18 U.S.C. § 1344: Bank Fraud; |
| aka Mike Azzam, | 18 U.S.C. §§ 1956(a) and (h): |
| aka Abdullah Taha, | Conspiracy to Launder Money; |
| aka A.A. Taha, | 18 U.S.C. § 1956(a)(1)(A)(i): |
| | Money Laundering; 18 U.S.C. |
| Defendant. | § 2: Causing an Act to be Done] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

(Conspiracy)

THE OBJECTS OF THE CONSPIRACY

1.    Beginning in or about 1997 and continuing through to September 15, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant MAHMOUD KHALID AZZAM, also known as ("aka") Mike Azzam, aka Abdullah Taha, aka

A.A. Taha (hereinafter "AZZAM"), and others known and unknown
to the Grand Jury, knowingly, willfully, and unlawfully
combined, conspired, and agreed to commit the following
offenses against the United States:

     a.   To commit mail fraud by devising, intending to
devise, and participating in a scheme to defraud credit card
companies, banks, and others ("the victim companies") of money,
and to obtain money and property from the victim companies by
means of false and fraudulent pretenses, representations, and
promises, and the concealment of material facts, and causing
items to be sent through the United States mail in furtherance
of the scheme, in violation of Title 18, United States Code,
Section 1341.

     b.   To commit wire fraud by devising, intending to
devise, and participating in a scheme to defraud the victim
companies of money, and to obtain money and property from the
victim companies by means of false and fraudulent pretenses,
representations, and promises, and the concealment of material
facts, and causing signs, signals, and sounds to be transmitted
by means of wire communication in interstate and foreign
commerce, in violation of Title 18, United States Code, Section
1343.

     c.   To commit social security fraud by falsely
representing, with the intent to deceive, that a social
security number was assigned to a member of the conspiracy by
the Commissioner of Social Security, when in fact such number
was not assigned to that person, in violation of Title 42,

1 | United States Code, Section 208(a)(7)(B).

2 |         d.    To commit bank fraud by knowingly devising and

3 | executing a scheme to use materially false and fraudulent

4 | pretenses, representations, and promises to obtain money,

5 | funds, assets, and other property owned by, and under the

6 | custody and control of, a financial institution, in violation

7 | of Title 18, United States Code, Section 1344.

8 |                 THE MANNER AND MEANS OF THE CONSPIRACY

9 |     2.  Defendant AZZAM, and others known and unknown to the

10 | Grand Jury, carried out the fraudulent scheme, in part, as

11 | follows:

12 |         a.    Defendant AZZAM would establish a number of

13 | shell companies that would not engage in any business activity.

14 | The names of these companies included: A&A Automotive, GNZ

15 | Enterprises, Isra, Inc., Layl, MK Azzam Enterprises, Nahar,

16 | Inc., QWB International, RL Azzam Enterprises, Sanah, Inc., and

17 | 1-877-Blackbook (the "shell companies").

18 |         b.    Defendant AZZAM would file articles of

19 | incorporation, fictitious business statements, tax returns,

20 | and/or other documents with government entities in the names of

21 | the shell companies in order to create the impression that the

22 | shell companies conducted legitimate business.  Defendant AZZAM

23 | would also obtain post office boxes, merchant bank accounts,

24 | and/or business addresses in the names of the shell companies

25 | or members of the conspiracy, in order to create the impression

26 | that the shell companies conducted legitimate business.

27 | Defendant AZZAM frequently used his residential addresses, a

28 |

3

1   Post Office Box held in his name, or his business address for
2   many of the shell companies that he created.

3          c.   Defendant AZZAM and other co-conspirators would
4   be listed as officers on documents for many of the shell
5   companies that were submitted to government entities and/or
6   used to create business addresses for the shell companies.

7          d.   Defendant AZZAM would obtain point of sale
8   ("POS") terminals (which are also known as credit card
9   terminals), in the names of the shell companies.   These POS
10  terminals would be used to "swipe" credit cards through in
11  order to conduct fraudulent electronic credit card
12  transactions.

13         e.   Defendant AZZAM would provide a co-conspirator
14  with credit card applications to be completed in the names of
15  non-existent individuals, people who did not know that their
16  names would be used, and people who knew their names would be
17  used but who agreed that their credit would be "busted out"
18  through this scheme.

19         f.   A co-conspirator would complete the credit card
20  applications and would provide false information to support the
21  credit application.   For example, the co-conspirator would use
22  false names, places of employment, social security numbers,
23  and/or annual salaries.   Defendant AZZAM was aware that the co-
24  conspirator was completing the applications with false
25  information and that the shell companies whose names were being
26  used on the applications did not actually provide goods or
27  services to anyone and did not employ any of the credit card
28

4

1  applicants.  During the course of the conspiracy, defendant

2  AZZAM and a co-conspirator would complete over 100 false credit

3  card applications.

4          g.    Once completed, the credit card applications

5  would be mailed, faxed, or communicated via interstate wire

6  communications to the victim companies.  The victim companies

7  would then issue credit cards and mail the cards to the

8  addresses indicated on the credit card application form, which

9  were addresses controlled by the members of the conspiracy.

10         h.    After obtaining the credit cards, defendant

11 AZZAM would swipe the fraudulently obtained credit cards

12 through the POS terminals, thereby creating the appearance that

13 goods or services had been rendered and paid for with the

14 credit card.  However, as defendant AZZAM and the other members

15 of the conspiracy all well knew, no services had been rendered

16 and no goods exchanged.  Once a POS transaction was approved,

17 the victim company would deposit money for the fictitious

18 transaction into the merchant bank account for the shell

19 company.

20         i.    Credit card statements reflecting the fraudulent

21 credit card transactions would be sent to the fictitious

22 individuals in whose name the credit card had been obtained,

23 and would be mailed to locations controlled by the members of

24 the conspiracy which had been used on the credit card

25 applications.

26         j.    The members of the conspiracy would frequently

27 pay a portion of the credit card bill in order to appear to be

28

                                5

1 a good credit risk and lure the victim company into extending a
2 higher credit limit.   When making the lure payments on the
3 credit cards, members of the conspiracy would use credit card
4 checks obtained from the line of credit extended on other
5 credit cards.

6          k.   The members of the conspiracy would abandon the
7 credit cards and would fail to pay the victim companies for all
8 of the transactions made.   As a result of these fraudulent
9 transactions, the members of the conspiracy obtained
10 approximately $900,000.

11                         OVERT ACTS

12      4.   On or about the dates listed below, in furtherance of
13 the conspiracy and to carry out the objects of the conspiracy,
14 defendant AZZAM, and others known and unknown to the Grand
15 Jury, committed the following overt acts, among others, within
16 the Central District of California and elsewhere:

17          (1).   On May 12, 1998, defendant AZZAM filed a
18 business license with the California State Board of
19 Equalization for A&A Automotive, which listed defendant AZZAM
20 as the owner of the business.

21          (2).   On June 24, 1998, defendant AZZAM filed
22 articles of incorporation for Nahar Inc. with the State of
23 Nevada, which listed defendant AZZAM as the president of the
24 company.

25          (3).   On October 5, 1998, defendant AZZAM filed
26 articles of incorporation for Sanah, Inc. with the State of
27 Nevada, which listed defendant AZZAM as the president.

28

                              6

(4).    On December 7, 1998, defendant AZZAM filed a business license with the California State Board of Equalization for Nahar Inc., dba A&A Automotive, which listed defendant AZZAM as the owner of the business.

(5).    On February 18, 2000, defendant AZZAM filed articles of incorporation for Nahar Inc. with the State of Nevada, which listed defendant AZZAM as the president of the company.

(6).    On April 17, 2001, defendant AZZAM filed articles of incorporation for Isra, Inc. with the State of Nevada, which listed defendant AZZAM as the president and a co-conspirator as the secretary of the company.

(7).    In June 2001, a co-conspirator agreed to list himself/herself as the secretary on the corporate list of officers for Isra, Inc., filed with the State of California.

(8).    On June 8, 2001, a co-conspirator agreed to list himself/herself as the secretary on the corporate list of officers for Isra, Inc., filed with the State of Nevada.

(9).    On September 27, 2001, defendant AZZAM directed a co-conspirator to sign a Discover credit card application in the name of Alex Arrasi.

(10).    On September 27, 2001, defendant AZZAM directed a co-conspirator to write on a Discover credit card application that Alex Arrasi worked at "Isra1 Inc." and earned $175,000 a year in salary.

(11).    On September 27, 2001, defendant AZZAM directed a co-conspirator to write on a Discover credit card

1  application that Alex Arrasi possessed a social security number

2  of xxx-xx-8188.

3            (12).   On November 27, 2001, defendant AZZAM directed

4  a co-conspirator to sign an American Express credit card

5  application in the name of Alex Arrasi.

6            (13).   On September 27, 2001, defendant AZZAM

7  directed a co-conspirator to write on an American Express

8  credit card application that Alex Arrasi worked at Isra, Inc.

9  and earned $175,000 a year in salary.

10            (14).   On September 27, 2001, defendant AZZAM

11  directed a co-conspirator to write on an American Express

12  credit card application that Alex Arrasi possessed a social

13  security number of xxx-xx-8188.

14            (15).   On November 17, 2001, defendant AZZAM swiped a

15  Discover credit card held in the name of AA Taha, through the

16  POS terminal for GNZ Enterprises, in the amount of $9,989.50.

17            (16).   On November 17, 2001, defendant AZZAM swiped a

18  Discover credit card held in the name of AA Taha, through the

19  POS terminal for GNZ Enterprises, in the amount of $2,195.50.

20            (17).   On December 9, 2001, defendant AZZAM contacted

21  Norwest Bank and caused a wire transfer of $14,700 to be sent

22  to Discover Card.

23            (18).   On December 24, 2001, defendant AZZAM received

24  confirmation that the $14,700 Norwest Bank wire transfer had

25  been sent to Discover Card.

26            (19).   On December 31, 2001, a co-conspirator signed

27  a rental application for Post Office Box 149, San Pedro,

28

8

California 90733.

    (20). On June 7, 2002, defendant AZZAM and a co-conspirator caused a US Bank letter reporting the closure of a credit account due to unusual activity to be mailed to Nahar Inc., in Redondo Beach, California.

    (21). On June 28, 2002, defendant AZZAM filed articles of incorporation for Nahar Inc. with the State of Nevada, which listed defendant AZZAM as the president of the company.

    (22). In September 2002, defendant AZZAM submitted an application for Post Office Box 13545, Torrance, California, held in the name of Azzam, dba Sanah Inc., Isra, Inc. and Lucrative Inc.

    (23). In September 2002, defendant AZZAM changed the mailing address for the American Express credit card held in the name of Alex Arrasi to P.O. Box 13545, Torrance, California.

    (24). On September 10, 2003, a co-conspirator signed a document to obtain a City of Torrance business license for Isra, Inc.

    (25). On June 3, 2004, a co-conspirator signed a document to obtain a City of Torrance business license for Isra, Inc.

    (26). On July 23, 2004, defendant AZZAM and a co-conspirator caused a fax to be sent to Wells Fargo Bank seeking approval for a line of credit for Isra, Inc.

    (27). On August 26, 2004, defendant AZZAM sent an e-

mail to an accountant stating: "Please take a look at your files and see what is the income for Amra Food International for the tax return of the years 2001 and 2002, and do the income for M. Azzam as accordingly.

(28).   On September 3, 2004, a co-conspirator sent an e-mail to defendant AZZAM and another co-conspirator listing things that needed to be done, including: "Follow-up to apps for UM/ISRA – US Bank, Elan, Western Financial, possibly First National Bank of Omaha . . . apply for new credit cards of lines of credit that do not require signing docs in person . . . requesting credit line increases from all existing accts."

(29).   On September 6, 2004, a co-conspirator sent an e-mail to defendant AZZAM and another co-conspirator stating: "Please email me or call the hotel today . . . to let me know the best choice for communication so we can continue applying for new US/ISRA or GNZ credit products."

(30).   On September 9, 2004, defendant AZZAM and a co-conspirator caused a Bank of America credit card statement and a returned check in the amount of $2,400 to be mailed to Isra, Inc., in Torrance, California.

(31).   On September 12, 2004, defendant AZZAM caused a letter to be faxed from Isra, Inc., in California addressed to Fleetbank, located in Pennsylvania, seeking an increased line of credit.

1       (32).   On September 15, 2004, defendant AZZAM and a

2 co-conspirator possessed over 500 debit and credit cards held

3 in the names of a variety of individuals and businesses.

COUNT TWO

[18 U.S.C. §§ 1341, 2]

(Mail Fraud)

5.   The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

6.   On or about September 9, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant MAHMOUD KHALID AZZAM, also known as ("aka") Mike Azzam, aka Abdullah Taha, aka A.A. Taha (hereinafter "AZZAM"), and others known and unknown to the Grand Jury, having devised, intended to devise, and participated in the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and the concealment of material facts, for the purpose of executing the above-described scheme to defraud, placed and caused to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service or by a private and commercial interstate carrier, the following material: A Bank of America credit card statement and a returned check in the amount of $2,400 mailed to Isra, Inc., in Torrance, California.

COUNT THREE

[18 U.S.C. §§ 1343, 2]

(Wire Fraud)

7.    The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

8.    On or about September 12, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant MAHMOUD KHALID AZZAM, also known as ("aka") Mike Azzam, aka Abdullah Taha, aka A.A. Taha (hereinafter "AZZAM"), and others known and unknown to the Grand Jury, having devised, intended to devise, and participated in the above-described scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and the concealment of material facts, for the purpose of executing the above-described scheme to defraud, willfully caused the transmission of the following by means of interstate wire communication:  a letter from Isra, Inc., in California addressed to Fleetbank, located in Pennsylvania, seeking an increased line of credit.

13

COUNT FOUR

[18 U.S.C. §§ 1956(a) and (h)]

(Conspiracy to Launder Money)

INTRODUCTION

9.    The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

THE OBJECTS OF THE CONSPIRACY

10.    Beginning in or about early 2001 and continuing to in or about September 15, 2004, in Los Angeles County, within the Central District of California, and elsewhere, defendant MAHMOUD KHALID AZZAM, also known as ("aka") Mike Azzam, aka Abdullah Taha, aka A.A. Taha (hereinafter "AZZAM"), and others known and unknown to the Grand Jury, knowingly and unlawfully combined, conspired, and agreed to commit the following offenses against the United States:

a.    Knowing that the funds involved represented the proceeds of unlawful activity, and with the intent to promote the carrying on of specified unlawful activity, namely, mail fraud in violation of 18 U.S.C. § 1341, and wire fraud in violation of 18 U.S.C. § 1343, to conduct, attempt to conduct, and cause others to conduct financial transactions involving the proceeds of specified unlawful activity and affecting interstate or foreign commerce, all in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

b.    Knowing that the funds involved represented the proceeds of unlawful activity, and with the intent to conceal and disguise the nature, the location, the source, the

14

1  ownership, and the control of the proceeds of the specified

2  unlawful activity, namely, mail fraud in violation of 18 U.S.C.

3  § 1341, and wire fraud in violation of 18 U.S.C. § 1343, to

4  conduct, attempt to conduct, and cause others to conduct

5  financial transactions involving the proceeds of specified

6  unlawful activity and affecting interstate or foreign commerce,

7  all in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

8                    THE MANNER AND MEANS OF THE CONSPIRACY

9       11.  In the course of the conspiracy, defendant AZZAM, and

10  others known and unknown to the Grand Jury, would use funds

11  obtained through mail fraud and wire fraud to promote and

12  conceal the scheme, including paying for initial purchases of

13  merchandise, with checks in the names of fictitious businesses

14  and individuals, in order to create a good line of credit with

15  the victim companies and/or to entice the victim companies to

16  increase the line of credit provided to the bust-out business,

17  and transferring money obtained from the fraud to co-

18  conspirators in order to further their fraudulent scheme.

19                             OVERT ACTS

20       12.  On or about the dates listed below, in furtherance of

21  the conspiracy, defendant AZZAM, and others known and unknown

22  to the Grand Jury, committed the following overt acts, among

23  others, within the Central District of California and

24  elsewhere:

25       (1).  On November 15, 2001, defendant AZZAM and co-

26  conspirators issued a check from the American Express credit

27  card account of AM-Tech, payable to Discover, in the amount of

28

1  $5,000.

2       (2).   On November 15, 2001, defendant AZZAM and co-

3  conspirators issued a check from the American Express credit

4  card account of AA Taha, payable to Discover, in the amount of

5  $6,000.

6       (3).   On November 18, 2001, defendant AZZAM and co-

7  conspirators issued a check from the American Express credit

8  card account of AA Taha, payable to Discover, in the amount of

9  $9,000.

10       (4).   On November 19, 2001, defendant AZZAM and co-

11  conspirators issued a check from the American Express credit

12  card account of AA Taha, payable to Discover, in the amount of

13  $9,850.

14       (5).   On November 21, 2001, defendant AZZAM and co-

15  conspirators issued a check from the American Express credit

16  card account of AA Taha, payable to Discover, in the amount of

17  $9,865.

18       (6).   On November 21, 2001, defendant AZZAM and co-

19  conspirators issued a check from the American Express credit

20  card account of AA Taha, payable to Discover, in the amount of

21  $9,875.

22       (7).   On April 2, 2002, defendant AZZAM and co-

23  conspirators issued a check from the Bank of America checking

24  account of Sanah Inc., payable to a co-conspirator, in the

25  amount of $3,076.87.

26       (8).   On May 15, 2002, defendant AZZAM and co-

27  conspirators issued a check from the Bank of America checking

28

16

1  acccount of Sanah Inc., payable to a co-conspirator, in the

2  amcunt of $1,702.44.

3       (9).   On December 16, 2002, defendant AZZAM and co-

4  conspirators issued a check from the Bank of America checking

5  account of GNZ Enterprises, payable to a co-conspirator, in the

6  amcunt cf $9,215.

7       (10).   On December 18, 2002, defendant AZZAM and co-

8  conspirators issued a check from the Bank of America checking

9  acccount of GNZ Enterprises, payable to a co-conspirator, in the

10 amcunt cf $9,217.

11      (11).   On December 19, 2002, defendant AZZAM and co-

12 conspirators issued a check from the Bank of America checking

13 acccount of GNZ Enterprises, payable to a co-conspirator, in the

14 amcunt cf $3,600.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[18 U.S.C. §§ 1956(a)(1)(A)(i), 2]

(Money Laundering)

13.    The Grand Jury incorporates and realleges paragraphs 1 through 4, and 10 through 12, as though fully set forth herein.

14.    On or about December 16, 2002, in Los Angeles County, within the Central District of California and elsewhere, defendant MAHMOUD KHALID AZZAM, also known as ("aka") Mike Azzam, aka Abdullah Taha, aka A.A. Taha (hereinafter "AZZAM"), and others known and unknown to the Grand Jury, knowing that the financial transaction described below represented the proceeds of some form of unlawful activity, conducted, caused to be conducted, and aided, abetted, counseled, commanded, induced, and procured others to conduct the following financial transactions affecting interstate commerce, which transaction in fact involved the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, namely, mail and wire fraud, in violation of 18 U.S.C. §§ 1341, and 1343: a check from the Bank of America checking account of GNZ Enterprises, payable to a co-conspirator, in the amount of $9,215.

18

COUNT SIX

[18 U.S.C. §§ 1344, 2]

(Bank Fraud)

15.  The Grand Jury incorporates and realleges paragraphs 1 through 4 as though fully set forth herein.

16.  Between on or about January 21, 2002 and the present, in Los Angeles County, within the Central District of California, defendant MAHMOUD KHALID AZZAM, also known as ("aka") Mike Azzam, aka Abdullah Taha, aka A.A. Taha (hereinafter "AZZAM") knowingly devised and executed a scheme to use material false and fraudulent pretenses and representations to obtain money, funds, assets, and other property owned by and in the custody and control of World Savings Bank, a federally-insured financial institution, by claiming that real property was being purchased by a person and falsely stating that this person was employed at Nahar Inc., had been employed at Nahar Inc. for 28 years, and that the

1    person earned $10,000 per month in salary, and thereby received

2    a mortgage in the amount of $343,200, in violation of Title 18,

3    United States Code, Section 1344.

4                                         A TRUE BILL

5

6                                         _____
                                          Foreperson

7

8    GEORGE S. CARDONA
     Acting United States Attorney

9

10   *Sally L. Meloch*

11   SALLY L. MELOCH
     Executive Assistant United States Attorney

12

     THOMAS P. O'BRIEN
13   Assistant United States Attorney
     Chief, Criminal Division

14

     EILEEN M. DECKER
15   Assistant United States Attorney
     Deputy Chief, Organized Crime & Terrorism Section

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    20